IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| A.D., by and through his parent L.D., | ) | CIVIL NO. 12-00307 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION FOR STAY PUT |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF EDUCATION, | ) | |
| STATE OF HAWAII, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR STAY PUT

## I.  INTRODUCTION

On May 31, 2012, Plaintiff A.D., by and through his parent L.D.
("Plaintiff" or "A.D."), filed a Complaint under 20 U.S.C. § 1415(i)(2) of the
Individuals with Disabilities Education Act ("IDEA"), seeking judicial review of
two May 15, 2012 decisions of an administrative hearings officer.  The first
administrative decision denied Plaintiff's Motion for Stay Put, which sought an
order that Plaintiff be allowed to remain at his current educational placement at
Loveland Academy ("Loveland") pending his concurrent administrative Request
for Due Process Hearing challenging the Defendant Department of Education,
State of Hawaii's ("Defendant" or "D.O.E.") denial of his request for continued
special education and related services after he reached age twenty.  Administrative

Record on Appeal ("AR") at 642.  The second administrative decision denied

Plaintiff's Motion for Summary Judgment and granted Defendant's Motion to

Dismiss that underlying administrative challenge.  *Id.* at 646.  This Order concerns

only the first administrative decision regarding "stay put" under 20 U.S.C.

§ 1415(j).[1]

    After filing this action, Plaintiff filed a Motion for Stay Put Order in

this court.  Doc. No. 9.  Plaintiff has thus both (1) appealed the hearings officer's

decision denying "stay put," and (2) filed a new request for "stay put" at the

district court level.  For the reasons set forth below, the Motion is GRANTED.

## II.  BACKGROUND

    The court sets the stage by first explaining the legal context in which

Plaintiff requested IDEA services beyond his twentieth birthday.  The court then

sets forth the basic details of Plaintiff's challenge and describes his corresponding

Motion for Stay Put.

---

[1]  The IDEA provides that:

[D]uring the pendency of any proceedings conducted pursuant to this section,
unless the State or local educational agency and the parents otherwise agree, the
child shall remain in the then-current educational placement of the child, or, if
applying for initial admission to a public school, shall, with the consent of the
parents, be placed in the public school program until all such proceedings have
been completed.

20 U.S.C. § 1415(j).

**A.      The Legal Context for Plaintiff's Eligibility Challenge**

Under the IDEA, a state is eligible for federal assistance if it submits a plan to the Secretary of Education assuring that it has in effect "policies and procedures to ensure" that "[a] free appropriate public education [("FAPE")] is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive[.]"  20 U.S.C. § 1412(a)(1)(A).  The IDEA thus allows for special education and related services until a student's twenty-second birthday.  *See, e.g.*, *B.T. ex. rel. Mary T. v. Dep't of Educ.*, 637 F. Supp. 2d 856, 863 n.9 (D. Haw. 2009).  That is, after turning twenty-two, a disabled student is no longer entitled to services under the IDEA.

"States, however, may impose different age restrictions, if those limitations are applied "broadly to general education students as well."  *R.P.-K. ex rel. C.K. v. Dep't of Educ.*, 2012 WL 1082250, at *6 (D. Haw. Mar. 30, 2012).  In this regard, the IDEA provides:

> The obligation to make a free appropriate public
> education available to all children with disabilities does
> not apply with respect to children --
> > (i) aged 3 through 5 and 18 through 21 in a
> > State to the extent that its application to
> > those children would be inconsistent with
> > State law or practice, or the order of any
> > court, respecting the provision of public
> > education to children in those age ranges.

3

20 U.S.C. § 1412(a)(1)(B).  "Pursuant to this exception, a state may lower the age limit for FAPE eligibility to as little as eighteen, provided that it is done in a manner consistent with the State's 'provision of public education' to all children of that age."  *R.P.-K.*, 2012 WL 1082250, at *6.  This exception "shall not apply . . . where a state does *in fact* provide or assure the provision of free public education to non-handicapped children" aged twenty to twenty-two.  Doc. No. 9-1, Mot. for Stay Put at 4 (quoting S. Rep. No. 94-168, at 19 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1425, 1443).

Hawaii subsequently passed a provision lowering the age limit for public schools -- in 2010, the Hawaii Legislature passed Act 163, 2010 Haw. Sess. L. ("Act 163"), now codified at Hawaii Revised Statutes ("HRS") § 302A-1134(c) (effective July 1, 2010), which provides:

> No person who is twenty years of age or over on the first instructional day of the school year shall be eligible to attend a public school.  If a person reaches twenty years of age after the first instructional day of the school year, the person shall be eligible to attend public school for the full school year.

Prior to passage of Act 163, "there was no law or practice in Hawaii to preclude students without disabilities from beginning a school year at age twenty, and therefore . . .  Hawaii's [prior] age-out policy, standing alone, could not justify the denial of special education services."  *Aileen Y. v. Dep't of Educ.*, 2011 WL

4

2223659, at *5 (D. Haw. June 6, 2011) (citations omitted).  That is, before Act 163, the prevailing view was that "because Hawaii schools provide education through 21 years old for general education students, it must provide a FAPE for [special education students through 21 years old] when the [Individual Educational Program ("IEP")] so recommends."  *B.T.*, 637 F. Supp. 2d at 866.

It was in this context that Plaintiff requested services under the IDEA up to his twenty-second birthday, as the court now explains.

## B.    Plaintiff's Administrative Action

Plaintiff, disabled within the meaning of the IDEA, was born in May of 1991.  AR at 643.  There is no dispute that he was qualified for, and entitled to, special education and related services, at least until he turned twenty in May of 2011.  He was placed at Loveland at D.O.E. expense when he was seven years old, and he remains there today.  *Id.*; Doc. No. 9-4, L.D. Decl. ¶ 7.

Prior to Plaintiff's twentieth birthday, Plaintiff's mother ("L.D.") attended an IEP meeting in May 2011 at his public home school to discuss post-secondary transition services.  Doc. No. 9-4, L.D. Decl. ¶ 2.  At that meeting, L.D. requested that Plaintiff be allowed to remain at Loveland (his "then-current educational placement") and continue to receive special education and related services after he turned twenty.  *Id.*  The home school's vice-principal denied the

request.  He relied on an interpretation of Act 163, and its specific limit of age

twenty for eligibility for public school attendance.  *Id.*

       Thus, on May 27, 2011, the D.O.E. issued a formal Prior Written

Notice of Department Action, indicating that, among other actions, "[A.D.] will

continue to receive his education in a special education community based

instruction class on a private school campus [but only] until the end of ESY

summer school which will end on July 31, 2011."  AR at 143.  The reason given

was: "[A.D.] will turn 20 [in May 2011] and will no longer be eligible to receive

DOE services after summer ESY ending on 7/31/2011."  *Id.*

       On June 20, 2011 -- after he turned twenty, but before his IDEA

services were to end -- Plaintiff challenged the denial by filing his administrative

Request for Impartial Due Process Hearing.  Plaintiff's position is that because the

D.O.E. provides "public education" to non-disabled students beyond age twenty

"by offering competency based (CB) diploma-equivalent or a General Education

(GED) diploma-equivalent," the D.O.E. is therefore required to offer him special

education and related services under the IDEA (20 U.S.C. § 1412(a)(1)(B)) until

age twenty-two.  AR at 3.

       Meanwhile, after July 31, 2011, Plaintiff has remained at Loveland,

and Loveland has continued to provide his special education and related services

(but without being paid by the D.O.E. or by Plaintiff).  Doc. No. 9-4, L.D. Decl.

¶ 7.  The Motion for Stay Put essentially seeks payment for those services from

August 1, 2011 to the present.

## C.    The Pending *R.P.-K.* Class Action

When Plaintiff filed his administrative request, the question whether

Act 163 allows the D.O.E. to terminate eligibility for special education and related

services under the IDEA prior to age twenty-two -- given the nature of the

D.O.E.'s "diploma equivalent" services to non-disabled students after the age of

twenty -- was being litigated in *R.P.-K. ex rel. C.K. v. Department of Education*,

Civ. No. 10-00436 DAE-KSC ("The *R.P.-K.* Class Action").  The *R.P.-K.* Class

Action had been filed about a year earlier, on July 27, 2010, in the U.S. District

Court for the District of Hawaii before The Honorable David A. Ezra.

Three days after the *R.P.-K.* Class Action was filed, two of the named

plaintiffs (R.P.-K. and R.T.D.) -- who were both twenty at the time, and who both

faced impending termination of IDEA services -- filed a motion for temporary

restraining order ("TRO") and preliminary injunction, seeking to prevent the

D.O.E. from terminating their eligibility for IDEA services and to require it to

continue to provide their special educational and related services until the

conclusion of the *R.P.-K.* Class Action litigation.  *See* Doc. No. 6-1 (Civ. No. 10-

00436 DAE-KSC).  R.P.-K. and R.T.D. were both receiving services at public

schools, and had also filed individual administrative challenges.  *See* Doc. Nos. 6-

17 & 22 (Civ. No. 10-00436 DAE-KSC).  They withdrew their motion for TRO

and preliminary injunction when the D.O.E. agreed to continue to provide IDEA

services to them under the IDEA's "stay put" provision, pending completion of

their administrative proceedings (including any appeals).  *See* Doc. No. 10 (Civ.

No. 10-00436 DAE-KSC).  The D.O.E. agreed on July 31, 2010 as follows:

> Because Plaintiffs R.P.-K. and R.T.D. have . . .  both
> filed requests for impartial hearings with DCCA's
> administrative office on or about June 29, 2010 pursuant
> to the IDEA and Chapter 8-60 of the H.A.R., the DOE
> will agree to the continuation of services and educational
> placement for R.P.-K. and R.T.D. . . .  [T]he DOE will
> comply with the stay-put requirements set forth in 34
> C.F.R. Section 300.518(a).  This provision of the IDEA
> allows a party to remain in their current educational
> placement during the pendency of any administrative or
> judicial proceeding regarding a due process hearing
> under Section 300.507, unless there is an agreement by
> the parties otherwise.

Doc. No. 10-1 (Civ. No. 10-00436 DAE-KSC).

On March 15, 2011, Judge Ezra certified the class in the *R.P.-K.* Class

Action under Federal Rule of Civil Procedure 23(b)(2) as follows:

> All individuals residing in the State of Hawaii who [are]
> over the age of 20 on or before the first day of the school
> year (or who will imminently be over the age of 20 on
> that date) but under the age of 22 who are entitled to

> receive special education and related services from
> Defendant the Hawaii Department of Education under the
> Individuals with Disabilities Education Act.

*R.P.-K. v. Dep't of Educ.*, 272 F.R.D. 541, 543 (D. Haw. 2011) (Order Granting in

Part and Denying in Part Plaintiffs' Motion for Class Certification).  In the present

case, A.D. does not dispute that he is a member of that class.  Indeed, in a

subsequent motion for preliminary injunction in the *R.P.-K.* Class Action, A.D.

was offered (among others) as a specific example of a class member whose IDEA

eligibility was to be terminated based on Act 163.  *See* Doc. No. 44-1, at 6-7 (Civ.

No. 10-00436 DAE-KSC).[2]  In May 2011 (as A.D. approached his twentieth

birthday), about two months after certification of the class in the *R.P.-K.* Class

Action, A.D. requested continued services from the D.O.E.  As set forth above, the

D.O.E. denied the request and Plaintiff filed his administrative due process request

on June 20, 2011.

On July 12, 2011, and again on September 19, 2011, Judge Ezra

denied without prejudice the class's motions for a preliminary injunction and for

summary judgment.  *See R.P.-K. v. Dep't of Educ.*, 817 F. Supp. 2d 1182, 1200 (D.

Haw. 2011).  He determined that a trial was needed to make definitive conclusions

---

[2]  The question whether A.D. is bound under res judicata principles by the results in the *R.P.-K.* Class Action is the subject of a different motion, and is not addressed in this Order.

regarding the nature of the D.O.E.'s "diploma equivalent services" that are

available to those over age twenty.  That is, factual questions regarding the nature

of those services needed to be resolved before the court could decide whether the

D.O.E. was violating the IDEA by refusing special education and related services

to the class.  *Id.*  A trial date was set for February 28, 2012.  *See* Doc. No. 77 (Civ.

No. 10-00436 DAE-KSC).

      Meanwhile, after a delay in his administrative proceeding due to

withdrawal of his prior counsel, Plaintiff filed his Motion for Stay Put in the

administrative proceeding on January 9, 2012.  Doc. No. 9-2, Ex. A; AR at 52.

The hearings officer heard that Motion on January 26, 2012, and -- given the

upcoming trial before Judge Ezra -- took the matter under advisement and

requested that Plaintiff inform the hearings officer of a decision by Judge Ezra.

Doc. No. 9-2, Ex. A.  It appears that the hearings officer was deferring a ruling on

stay put pending the conclusion of the trial.  *See, e.g.*, AR at 423 ("It was my

[(D.O.E.'s counsel's)] understanding that the [stay put] Decision was being put off

pending the conclusion of the R.P.-K. civil trial.").

      On March 30, 2012, Judge Ezra issued his Findings of Fact and

Conclusions of Law in the *R.P.-K.* Class Action.  *See R.P.-K. ex rel. C.K. v. Dep't*

*of Educ.*, 2012 WL 1082250 (D. Haw. Mar. 30, 2012).  He ruled in favor of the

D.O.E., concluding that:

> Plaintiffs have not demonstrated that the DOE has a state law or practice whereby non-disabled students between the ages of twenty and twenty-two are being provided the functional equivalent of a secondary school education. Therefore, lowering the age limit for FAPE eligibility to twenty pursuant to Act 163 is consistent with the State's law and practice respecting the provision of public education to general education students over the age of twenty.

*Id.* at *8.  Accordingly, judgment was entered in favor of the D.O.E. on April 5,

2012.  The class timely appealed that judgment and the matter remains pending in

the Ninth Circuit.  *See E.R.K. v. Dep't of Educ.*, No. 12-16063 (9th Cir. filed May

2, 2012).[3]

## D.    Further Administrative Proceedings

On April 2, 2012, Plaintiff notified the hearings officer of Judge

Ezra's decision in the *R.P.-K.* Class Action.  AR at 278, 302.  On April 10, 2012,

he filed a Motion for Summary Judgment in the administrative proceedings

(apparently including additional information regarding the nature of the D.O.E.'s

"diploma equivalent" services that was not presented in the *R.P.-K.* Class Action).

---

[3] The lead plaintiff and class representative, R.P.-K., was replaced by E.R.K. after R.P.-K. reached twenty-two.  *See* Doc. Nos. 105, 114 (Civ. No. 10-00436 DAE-KSC).

AR at 303; Doc. No. 9-2, Ex. D.  The D.O.E. responded with a Motion to Dismiss,

relying upon Judge Ezra's March 30, 2012 Findings of Fact and Conclusions of

Law in the *R.P.-K.* Class Action, and arguing that Judge Ezra had decided the

relevant questions.  AR at 428.  The hearings officer heard both Motions on May 8,

2012.

  On May 15, 2012, the hearings officer issued two decisions.  First, he

denied Plaintiff's Motion for a Stay Put Order, stating that Judge Ezra held in the

*R.P.-K.* Class Action that "Act 163 . . . is a valid and enforceable law" and that

"Act 163's provision to end eligibility to attend public school for all students at age

20 years was consistent with the State's law and practice respecting the provision

of public education to general education students over the age of twenty."  Doc.

No. 9-2, Ex. A at 3.  He concluded that "because Act 163 (HRS Section 302A-

1134(c)) is the valid and enforceable law, after Student reached the age of 20 [in

May 2011], he was no longer eligible [for] the protections of the IDEA, including

stay put."  *Id.*  He rejected Plaintiff's argument that stay put applied when a bona

fide dispute regarding eligibility exists, reasoning that "[b]ecause there is no

question of Student's age at the start of the 2011-2012 school year, there is no bona

fide dispute regarding the basis upon which the D.O.E. claims that Student is no

longer eligible to receive special education and related services."  *Id.* at 4.

Second, he granted the D.O.E.'s Motion to Dismiss, again relying on the Findings of Fact and Conclusions of Law in the *R.P.-K.* Class Action.  Doc. No. 9-2, Ex. C.  He reasoned that "[t]he Courts have found that Act 163 (HRS Section 302A-1134(c)) is the valid and enforceable law.  There is no dispute that Student turned 20 years old [in May 2011]; and that the last day of ESY services for the 2010-2011 school year was on July 31, 2011."  *Id.* at 3.  He found the termination proper and dismissed the action.  *Id.*

## E.     Procedural History

On May 31, 2012, Plaintiff appealed both orders of the Hearings Officer under 20 U.S.C. § 1415(i)(2).  Doc. No. 1.  On July 23, 2012, Plaintiff filed his Motion for Stay Put Order.  Doc. No. 9.  Defendant filed an Opposition on October 1, 2012, Doc. No. 22, and Plaintiff filed a Reply on October 5, 2012.[4]  Doc. No. 25.  The court heard the Motion on October 22, 2012.

## III.  <u>STANDARD OF REVIEW</u>

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of the hearings officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be

---

[4] Defendant also filed a Motion to Dismiss, primarily asserting that Plaintiff is bound under res judicata by the March 30, 2012 decision in *R.P.-K.*  *See* Doc. No. 18.  Plaintiff responded by filing a Counter-Motion for Summary Judgment.  *See* Doc. No. 23.  Again, this Order addresses only the Motion for Stay Put.

brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). A party challenging the administrative decision under the IDEA bears the burden of proof in the district court. *See, e.g.*, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009).

The IDEA requires that the court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "[S]ection 1415(i)(2)(C)'s mandate that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1008 (9th Cir. 2009) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)) (some citations and quotations omitted). The degree of deference given to a hearings officer's findings increases when those findings are "thorough and careful." *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007). Ultimately, however, "the court is free to determine independently how much weight to give the state hearing officer's determinations." *Id.* at 1009

(citing *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458,

1466 (9th Cir. 1996)).[5]

## IV.  DISCUSSION

### A.    "Stay Put" Principles

As noted above, the IDEA provides, in pertinent part, that:

> [D]uring the pendency of any proceedings conducted
> pursuant to this section, unless the State or local
> educational agency and the parents otherwise agree, the
> child shall remain in the then-current educational
> placement of the child, or, if applying for initial
> admission to a public school, shall, with the consent of
> the parents, be placed in the public school program until
> all such proceedings have been completed.

20 U.S.C. § 1415(j); *see also* 34 C.F.R. § 300.518(a).[6]  "[C]ommonly referred to as

the 'stay put' provision, [§ 1415(j)] requires the educational agency to maintain a

---

[5]  This standard applies to the extent this court is reviewing the hearings officer's May 15, 2012 decision to deny the Motion for Stay Put at the administrative level.  Here, by the present Motion for Stay Put, Plaintiff is effectively not only seeking a review of the hearings officer's May 15, 2012 decision, but he is also independently seeking a stay put Order at this district court level.  In any event, to the extent this court is reviewing the hearings officer's May 15, 2012 decision regarding stay put, the court gives it little deference -- the hearings officer did not analyze the stay put issue; he simply followed Judge Ezra's *R.P.-K.* Class Action decision as to the merits of the challenge.

[6]  Section 300.518(a) provides:

(a) Except as provided in § 300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.

15

disabled child's educational program until any placement dispute between the agency and the child's parents is resolved." *Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1179 (9th Cir. 2002). Under this provision, "the school district and the state [are] responsible for the costs of [a student's] placement during the court review proceedings regardless of which party prevails in this appeal." *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990). Upon entry of a stay put order, a school district is obligated to pay the cost of the student's current educational placement pending the resolution of the judicial proceedings. *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009).

"A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (*e.g.*, irreparable harm) in order to obtain preliminary relief." *Id.* at 1037 (citing *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)). Indeed, "the stay put provision requires no specific showing on the part of the moving party, and no balancing of equities by the court[.]" *Id*. at 1040. "The automatic injunction standard, however, only applies when the court considers a stay put motion; it does not apply to a preliminary injunction motion that affects a stay put invocation, but is not itself the invocation." *Sam K. ex rel. Diane C. v.*

*Dep't of Educ.*, 2012 WL 3647139, at *2 (D. Haw. Aug. 22, 2012) (citing *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 (9th Cir. 2010)).

"[A]pplication of the 'stay put' provision does not ordinarily depend on whether the underlying suit is meritorious." *A.R. v. Haw. Dep't of Educ.*, 2011 WL 1230403, at *13 (D. Haw. Mar. 31, 2011) (citing *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 82 (3d Cir. 1996)). *Susquenita* recognized that "stay put" "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." 96 F.3d at 83 (quoting *Drinker*, 78 F.3d at 864-65). *See also, e.g.*, *Mackey v. Bd. of Educ.*, 386 F.3d 158, 160 (2d Cir. 2004) (citing *Susqeunita*, emphasizing that stay put applies "*regardless of whether their case is meritorious or not*"). Congress made a clear policy choice with § 1415(j) "that the danger of excluding a handicapped child entitled to an educational placement from that placement was much greater than the harm of allowing a child not entitled to an educational placement to remain in that placement during the pendency of judicial proceedings." *Cronin v. Bd. of Educ. of the East Ramapo Central Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988).

**B.     Application -- Plaintiff Is Entitled to a "Stay Put" Order**

### 1.     *The Posture Fits Squarely Within § 1415(j)'s Clear Directive*

The stay-put provision is unequivocal -- because Plaintiff has challenged a D.O.E. eligibility determination that would (and did) change his educational placement, he "*shall* remain in the then-current educational placement . . . until all such proceedings have been completed."  20 U.S.C. § 1415(j) (emphasis added).  *See Honig v. Doe*, 484 U.S. 305, 323 (1988) (rejecting "petitioner's invitation to rewrite the statute" when "[f]aced with this clear directive").  When Plaintiff requested a due process hearing, he was a qualified disabled student receiving benefits under the IDEA and was appropriately placed at Loveland at that time.  That is, Loveland was his "then-current educational placement."  Plaintiff was (and still is) challenging the D.O.E.'s determination (based upon an application of Act 163 and an interpretation of the IDEA) that he is no longer eligible for IDEA services.[7]  Therefore, under

---

[7] Unquestionably, Plaintiff was challenging a change in "placement" -- when he filed his request for due process hearing, the D.O.E. was terminating his eligibility and essentially proposing *no* placement.  *See, e.g.*, *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1116 (9th Cir. 2010) ("[U]nder the IDEA a change in educational placement relates to whether the student is moved from one type of program -- *i.e.*, regular class -- to another type -- *i.e.*, home instruction. A change in the educational placement can also result when there is a significant change in the student's program even if the student remains in the same setting."); *see also R.B. v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 762 (E.D. Penn. 2010) ("[D]isenrollment constituted a change in placement.").

§ 1415(j)'s clear directive, Plaintiff was (and is) entitled to "stay put" at Loveland

pending these proceedings. *Cf. R.Y. v. Haw., Dep't of Educ.*, 2010 WL 558552, at

*7 (D. Haw. Feb. 17, 2010) ("[B]ecause Plaintiffs are appealing whether Student is

entitled to a regular high school diploma, Defendant's issuance of a diploma to

Student did not extinguish Student's stay put rights under the IDEA."); *Tindell v.*

*Evansville-Vanderburgh Sch. Corp.*, 2010 WL 557058, at *4 (S.D. Ind. Feb. 10,

2010) ("We conclude that the existence of a dispute in the present matter as to [the

student's] eligibility . . . is precisely the sort of 'judicial proceeding' for which the

stay-put provision was designed."). And the right to stay put continues to apply

through an appeal to the Ninth Circuit. *See Rocklin Unified Sch. Dist.*, 559 F.3d at

1038 (rejecting "the [school] District's position that the plain language of the stay

put provision excludes appeals from final judgments of the district courts from

civil actions").

It makes no difference whether or not Plaintiff is likely to succeed on

the merits of his challenge regarding his eligibility. Section 1415(j) enjoins the

D.O.E. from changing Plaintiff's educational placement "regardless of whether

[his] case is meritorious or not," *Susquenita*, 96 F.3d at 83, and "regardless of

which party prevails [on the merits]." *Clovis*, 903 F.2d at 641. In this context, stay

put is an "automatic" injunction. *Rocklin Unified Sch. Dist.*, 559 F.3d at 1037.

Stay put thus should have entered when Plaintiff filed his Request for Due Process Hearing on June 20, 2011, and the hearings officer erred in not granting the Motion for Stay Put that Plaintiff filed at the administrative level on January 9, 2012. *See, e.g.*, *K.D. ex rel. C.L. v. Dep't of Educ.*, 665 F.3d 1110, 1117 (9th Cir. 2011) ("[T]he stay put provision does not apply unless and until a request for a due process hearing is filed."). In any event, Plaintiff is entitled to a stay put order now (just as the D.O.E. agreed to on July 31, 2010 for the lead plaintiffs, R.P.-K. and R.T.D., in the *R.P.-K.* Class Action. *See* Doc. No. 10-1 (Civ. No. 10-00436DAE-KSC)).

### 2.    *An Exception to "Stay Put" Does Not Apply*

Nonetheless, the court recognizes there are practical limitations to stay put's "automatic" nature. "The reference to 'automatic' means 'that the moving party need not show the traditionally required factors (*e.g.*, irreparable harm) in order to obtain preliminary relief.' This is a far cry from saying that any request for relief under the 'stay put' provision must automatically be granted." *A.R. v. Haw., Dep't of Educ.*, 2011 WL 1230403, at *10 (D. Haw. Mar. 31, 2011) (quoting *Rocklin Unified Sch. Dist.*, 559 F.3d at 1037). As *A.R.* discussed, courts have "rejected [the] argument that 'stay put' automatically always applies, no matter what." *Id.* at *12. For example, "a parent is not entitled to relief under the 'stay

put' provision based on a procedural defect that the parent has indisputably caused."  *Id.* at *11.

Likewise, once a student reaches age twenty-two, he would not be eligible for IDEA services, including stay put relief (absent an award of compensatory education for prior violations).  But such ineligibility would be based on the age limit in the IDEA itself -- not under an interpretation of state law that allowed IDEA services up to the federal statutory age limit.  At that point, "the stay put provision, which is intended to prevent the child from losing benefits to which he is entitled, loses its rationale," *Bd. of Educ. of Oak Park v. Ill. Bd. of Educ.*, 79 F.3d 654, 659-60 (7th Cir. 1996), and thus stay put could not apply to extend eligibility past age twenty-two.

Such limited exceptions to stay put do not apply here, where Plaintiff has made a genuine, bona fide challenge to the D.O.E.'s ineligibility determination (even if the Ninth Circuit ultimately determines that Act 163 and Hawaii's practices do not violate the IDEA).  *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1474 (6th Cir. 1996) ("[T]he 'stay put' rule is not designed to prolong 'the current educational placement' unless there is a genuine appealable issue that 'the current educational placement' is the appropriate placement under the Act and should not be changed.").  Again, Plaintiff need not

demonstrate a likelihood of success as to that challenge, or meet any other traditional requirements for obtaining a preliminary injunction.  Here, he is seeking to "stay put" while he attempts to litigate whether, despite Act 163, the D.O.E.'s "non-diploma" services constitute "public education" available to non-disabled students up to age twenty-two, such that the D.O.E. *must* likewise offer IDEA services to disabled students up to age twenty-two.

Plaintiff seeks to do so on an allegedly different (or supplemented) factual record than that presented in the *R.P.-K* Class Action.  He also faces a res judicata challenge because he is an *R.P.-K* class member -- but he seeks to litigate that issue by arguing he is not bound by that decision because he was not adequately represented.  *See, e.g.*, *Pelt v. Utah*, 539 F.3d 1271, 1284-86 (10th Cir. 2008) (analyzing whether class members are bound to a class action judgment). Those are plausible and genuine arguments, even if Plaintiff might face difficult challenges.  *Cf. R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1126 (9th Cir. 2011) ("Here, the parents had a statutory remedy available that would arguably have provided additional educational benefit to [student], had they prevailed.  They made plausible arguments as to why they should prevail; the fact that the arguments were not successful doesn't make them frivolous.").  And, perhaps most importantly, if he ultimately prevails (or if, in the meantime, the

22

Ninth Circuit reverses or vacates the *R.P.-K* Class Action decision[8]), then Plaintiff would likely be entitled to the relief sought -- eligibility for IDEA services until age twenty-two.  Thus, Plaintiff is entitled to "stay put" while those challenges are pending.

### 3. The D.O.E.'s Primary Argument -- That "Stay Put" Does Not Apply Because Plaintiff has "Aged Out" -- Is Circular

In opposition, the D.O.E. argues that the stay put provision does not apply because Plaintiff's right to educational services ended when he turned twenty.  The logic is this:  (1) if a student "ages out," then he is no longer eligible for special education services and has no corresponding statutory rights under the IDEA; (2) "stay put" is a statutory right under the IDEA; and thus (3) because Plaintiff "aged out" at age twenty under Act 163 (without violating the IDEA,

---

[8]  If the Ninth Circuit affirms the *R.P.-K.* Class Action decision based on matters of law, this court would be bound, not by res judicata, but by the Ninth Circuit's holdings as a higher-level tribunal.  *See, e.g.*, *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, or course, bound by the law of their own circuit[.]").  Likewise, if the Ninth Circuit reverses, or otherwise remands on factual matters, the court could be constrained by its views of the analysis.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[L]ower courts [are] bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'"(quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989)).  Indeed, it may be prudent for this court to wait for the Ninth Circuit appeal in the *R.P.-K.* Class Action decision, after ruling on this Motion for Stay Put, before proceeding further at this level.  As the court indicated at the October 22, 2012 hearing, the parties may file letter briefs within seven days of issuance of this Order indicating their views on whether this court should postpone a hearing on the merits of this action, pending a ruling by the Ninth Circuit in the *R.P.-K.* Class Action.

given the *R.P.-K.* Class Action trial decision), he is no longer eligible under IDEA, and he thus has no corresponding right to stay put.

But the D.O.E.'s logic is circular.  The logic assumes the result, and misses the critical inquiry, which is whether Plaintiff is eligible in the first place.[9] The *initial* question -- even if Plaintiff has reached age twenty and despite Act 163 -- is whether Hawaii "does *in fact* provide or assure the provision of free public education to non-handicapped children" aged twenty to twenty-two, such that IDEA services must also be provided to disabled students until they reach twenty-two.  Doc. No. 9-1, Mot. for Stay Put at 4 (quoting S. Rep. No. 94-168, at 19 (1975), reprinted in 1975 U.S.C.C.A.N. 1425, 1443).  The D.O.E.'s logic is "a classic example of the logical fallacy known as circular reasoning, in which the conclusion mirrors the starting premise."  *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 515 (D. N.J. 1997).

The D.O.E. attempts to distinguish the analogous situation where a student is entitled to stay put pending final resolution of dispute about whether a student's graduation would end eligibility for IDEA services.  *See, e.g.*, *R.Y.*, 2010 WL 558552, at *7.  It argues that Plaintiff's age is not disputed, as compared to a

---

[9]  Plaintiff was certainly eligible-- and had stay put rights -- when he requested continued IDEA services in May 2011, and the D.O.E. does not dispute that he was still properly receiving such services when he filed his due process request in June 2011.

dispute about the legitimacy of a graduation.  But this is no distinction because Plaintiff's age is not the question here.  Rather, again, the question is whether Hawaii provides "diploma-equivalent" "public education" to non-disabled students aged twenty to twenty-two.  Stay put applies not just to factual disputes such as a student's age (if genuinely disputed) or whether a student was legitimately graduated (as in *R.Y.*).  It applies (at minimum) while a genuine challenge is made to eligibility and placement determinations, whether dependent upon a disputes of fact or on a disputed legal interpretation of an applicable statutory provision.  *See Tenn. Dep't of Mental Health*, 88 F.3d at 1474 ("[T]he stay put rule is not designed to prolong 'the current educational placement' unless there is a genuine appealable issue that 'the current educational placement' is the appropriate placement under the [IDEA] and should not be changed.").

The court certainly recognizes that the D.O.E. prevailed at trial in the *R.P.-K.* Class Action.  That decision, however, was made *after* Plaintiff had filed his due process request and *after* he had sought a stay put order at the administrative level.  Even though Plaintiff was (and still is) an *R.P.-K.* class member, at the time he filed his administrative challenge regarding his eligibility, the *R.P.-K.* Class Action was still disputed -- and, indeed, Judge Ezra later determined that a trial was needed on disputed factual issues.  *See R.P.-K.*, 817 F.

Supp. 2d at 1196.  There was a very real and ongoing dispute regarding eligibility

pending in June 2011 (when Plaintiff's request for due process hearing was filed)

and in January 2012 (when his Motion for Stay Put was filed at the administrative

level).  At minimum, "stay put" should have "automatically" issued at the

administrative level, pending the *R.P.-K.* Class Action proceedings.  By waiting to

decide the stay put motion until Judge Ezra issued a decision on the merits, the

hearings officer deprived Plaintiff of FAPE in the meantime.  And, because the

*R.P.-K.* Class Action is now *still* pending in the Ninth Circuit (and also because the

question is pending in *this* court, arguably based on a different record than in *R.P.-*

*K.*), Plaintiff is entitled to a stay put order now.  *See Rocklin Unified Sch. Dist.*, 559

F.3d at 1037 (holding that "stay put" applies through an appeal from a district court

to an appellate court).

### 4.     *Similar Decisions Denying Stay Put Are Distinguishable*

Finally, the court is aware that in *K.K. v. Department of Education*,

2011 WL 3584501 (D. Haw. (Aug. 6, 2011), Judge Ezra declined -- without

prejudice -- to issue a preliminary injunction regarding "stay put."  And *K.K.*, like

this case, also involved an *R.P.-K.* Class Action class member who had reached age

twenty and was seeking "stay put" while the *R.P.-K.* Class Action was litigated.

*See id.* at *5.  Nevertheless, *K.K.* is distinguishable because that court faced a

motion for TRO/preliminary injunction and applied the much higher preliminary

injunction standard, rather than the "automatic" injunction standard set forth in

*Rocklin*.  *See id.* at *4 ("[K.K.] must show a likelihood of success on the merits in

demonstrating [the D.O.E.'s application of] Act 163 is invalid.  Absent such a

showing [K.K.] is not entitled to 'stay put.'").  That higher standard may have

applied in *K.K.* because the student's IDEA services had already ended (unlike in

the present case) when his motion for TRO/preliminary injunction seeking stay put

was filed.  *See id.* at *1.  The motion in *K.K.* was "to immediately *restore* special

education and related services[.]"  *Id.* (emphasis added).[10]

      *K.K.* also relied in part on *N.D. v. Department of Education*, in which

the Ninth Circuit upheld an order from a judge in this court that declined to require

stay put in a preliminary injunction context.  600 F.3d at 1108.  The plaintiffs in

*N.D.* sought to invoke stay put for disabled children during a system-wide (*i.e.*,

applicable to *all* students, disabled or not) shutdown of Hawaii public schools on

seventeen designated "furlough Fridays."  But *N.D.* is likewise distinguishable

because it also involved "all factors of the preliminary injunction test," *id.* at 1112,

rather than the automatic injunction which applies when considering an original

---

[10]  In any event, this court is not bound by *K.K.*, because it is a decision of a co-equal court.  *See, e.g.*, *Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1226 n.12 (D. Haw. 2001) ("This court . . . is not bound by [a decision of a different judge in the District of Hawaii]").

stay put motion. *See Sam K.*, 2012 WL 3647139, at *2 ("The automatic injunction standard . . . applies when the court considers a stay put motion; it does not apply to a preliminary injunction motion that affects a stay put invocation, but is not [by] itself the invocation.") (citing *N.D.*).

Moreover, *N.D.* upheld the denial of stay put because the request did not seek to prevent a change in placement, which is an independent requirement for a stay put order. *Id.* at 1116. *N.D.* reasoned that because "Hawaii's teacher furloughs and concurrent shutdown of public schools is not a change in the educational placement of disabled children. . . . § 1415(j) is not triggered." *Id.* at 1116-17. *See also, e.g.*, *Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 177 (D. D.C. 2012) ("Since the District has not proposed any change to [the student's educational placement, much less a 'fundamental change,' Plaintiffs have no basis on which to invoke the stay-put provision."); *R.B. v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 756 (E.D. Pa. 2010) ("[A]n injunction under the stay-put provision is only available where the [school] proposes or effects a change in a student's 'educational placement.'"); *cf. L.M.*, 556 F.3d at 913 ("Because [the student's] private program . . . does not qualify as a 'current educational placement' under § 1415(j), the 'stay put' provision does not apply[.]").

Here, in stark contrast, the D.O.E.'s termination of Plaintiff's eligibility is an obvious "change in placement."  *See, e.g.*, *R.B.*, 762 F. Supp. 2d at 759-60 ("Like a graduation, indefinite suspension, or expulsion, the unilateral disenrollment of a special education student, which results in the absolute termination of a child's special education program, and purportedly the termination of a [school district's] responsibility to deliver FAPE, is a change in placement."). Plaintiff's Motion for Stay Put seeks the precise relief that Congress provided for in § 1415(j).  *See Honig*, 484 U.S. at 325 ("Our conclusion [is] that § 1415[j] means what it says[.]").

## V.  <u>**CONCLUSION**</u>

For the foregoing reasons, the Motion for Stay Put is GRANTED.  As noted above, the parties may file supplemental letter briefs within seven days, addressing whether the court should postpone further proceedings on the merits, pending a decision by the Ninth Circuit in the *R.P.-K.* Class Action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 25, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*A.D. v. Dep't of Educ.*, Civ. No. 12-00307 JMS-KSC, Order Granting Plaintiff's Motion for Stay Put